On the rendition of the opinion in this case, to be found in 1st Marsh. 46, Messrs. Ribband Talbot presented the following petition for a rehearing:
The counsel for Head’s administrators respectfully solicit a rebesring of the cause; and whilst the rules of the court permit such motions, and the practice of court is to grant they trust that the petition will not be considered as any disrespect to the court. The peculiar circumstances of this case urge the counsel to this course; for it is a veritable fact, that Macey, the administrator, can neither write or read writing; and the administratrix is an old and illiterate woman, utterly incapable of taking care of her interests, much less of the interests of the other co-defendants, all of whom are illiterate, and depend upon counsel, who have to perform the task of agents in seeking out information, rather than of counsel acting on the statements furnished,
*113 Again, the decree of the court below not only deprives the defendants of tbe slaves, but decrees a heavy sum by way of hire, runious to them, viz the sum of $2,199j whole amount of hire — ánd to the complainants $1,448 19.
Tbe counsel urge for reconsideration — 1st, That the facts of payment of the distributive shares of tbe estate of Ben. Head, the elder, were not in issue in the former cause; the original bill claimed the negroes, not as a part of the estate of Ben. Head, but as properly belonging to the estate of Grace Head, their grandmother, and sought to set aside a bill of sale made by her to Ben. Head, jnr. her son, on the score of fraud in him; and sought an account of the estate Of said Grace Head.
The amended bill alledged, that Ben. Head, the elder, left to Grace a life estate in a portion of his property, and the residue to the ancestor of the complainants, with which Grace Head purchased Molly, declaring that Molly and her increase, the slaves in controversy, were the property of •• Francis and Mary, and that she made the purchase for them; that Ben Head well knew the same, and that the writing in the original bill, from said Grace to. said Ben. Head, jr. was without consideration, and fraudulent.
In neither of the bills is any account of the estate of Ben. Head the elder demanded; in neither bill is there á suggestion that they have not received their full share of that estate; nor is there even á suggestion that a full and fair inventory was not returned of that estate; or that the widow’s part had not been accounted for. The amended bill relies on the purchase and declaration of Grace Head, that the slave Molly and her increase were for Francis and Mary, after her death and notice thereof to Ben, Head, jr. But to shew conclusively the amount to which they were entitled, or had received of the estate of Ben. Head tbe elder, was not in issue; the original and amended bill do not state who was the executor of Ben. Head, sen. nor is the representative of the estate of said Head sen. made a pattyr nor his heirs — but the bill is against Matey and Milly Head, administrator and administratix of Ben Head, jr: and against Smith and John Head, (of Scott), as holdings some of the slaves.
It may be affirmed, therefore, as certainly true, that hoth the original and amended bill claimed the slaves from Grace Head, and sought to set aside the bill of sale by her to Ben. Head tbe younger.
*114 The receipts non’ relied on were not before tbe court otó ^10 ^rst l>ea|ir,g — nor were lbe facts, of which these re» ceipts are evidence, in issue; for that which is not alleged by complainant in his bill, nor set up by defendant, nor replied to by complainant, cannot be in issue. Six receipts were exhibited by ihe amended answer; but the answers do not even state or allege any thing beyond those receipts. Tbe person who ought to account for the estate of Ben. Head, sen. was not a party; — it is therefore respectfully suggested, that the facts now relied on were not in issue before; that there was nothing in the cause formerly which called from the defendant an account of the estate of Ben. Head, sen.; and tbe attention of the defendants and complainant were drawn to the bill of sale, which was the subject of complaint in both bills.
2dly. The counsel would suggest,- it is not tbe decree of the court of appeals that is sought to be reviewed — tbe court of appeals reversed the decree of the circuit court, but made no decree; the cause was remanded to that court, for them to enter a decree according to the opinion delivered ;~that opinion was, ‘‘that such of the complainants as have not been paid,” were entitled; and if the opinion of the court of appeals is tbe first intimation to the party defendant that an examination into the payments made by the representatives of Ben. Head, the elder, (as the counsel have endeavored to shew) it is respectfully suggested that the discovery of papers relating thereto, by the defendants, who were not properly the keepers of those papers, deserves tbe consideration of the court as much as if the discovery had been made after such facts had been put in issue in the original cause, by the suggestions of the bill and answer — which leads to the enquiry, bow far bills of review wiil be indulged.
3dly. Bills of review are either for matters of law, apparent in the decree, or for tbe discovery of new matter— the former will not lie after affirmance in the appellate court ~-the latter will lie even after affirmance — for if tbe matter be proper, the discovery after affirmance is sufficient to prevent the bar by the decree and affirmance. But here there has been no affirmance; in the court of appeals, the decree sought to be reversed by this appeal is the first rendered in favor of the appellants; and the matters are discovered after the decree of the court of appeals, and introduced before the decree of the court below, was never befoie iu is- *115 stie, as we have endeavored to shew. And here we respectfully ask the court to look into the record, to see what was in issue; for we must (most respectfully) insist that the printed opinion (Marshall, 46,) would be a fallacious test of what was or was not in issue between the parlies; and if the decree of the circuit court had pursued that opinion to the extent, the representatives of Ben. Head, sen. should have been made parties; or if not, then the decree would have been against the administrators of Ben. Head,jr. for the assets of Ben. Head, sen. and as to matters never alleged in the bill nor never demanded; for it speaks of “two equal shares of two-third parts of the property not specifically bequeathed,” when the negroes alone were the subjects of controversy.
But the present matter, so far from seeking to reverse the decree of the court of appeals, is in accordance therewith, and only tends to shew who have been paid.
4th. The hire of the slaves is estimated from the death of Grace Head, in 1793 — the bill was not filed till 1809— and it is suggested that the hire ought not to have commenced until the bill filed, which is fhe first evidence of demand and assertion of the claim to the slaves, especially when the staleness of the demand is considered,
5th. No allowance is made for maintaining and raising the young negroes; and because the defendants resisted the attempt to have the estimate made by commissioners, the court seem to approve the decree of the court below not allowing any thing therefor. It is respectfully suggested that the appointment of commissioners was premature; at the same term at which the commissioners were appointed, but subsequent thereto, the amended answer was filed and allowed, which was thought by counsel to be a virtual repeal of that order; for the complainants joined in their demand, and the cause could not properly be jieard as to some before a hearing as to all; and it was thought that a jury would be empannelled if necessary; — but when the opinion of the court of appeals directs such allowance, it is not a sufficient reason for disallowing it, that the defendants would not submit the slaves to division, and had laid themselves liable to attachment for not performing another part of the decree.
6th. The matters relating to the settlement and receipts to Smith, as guardian, were rejected, 1st, because not al-Jeged in the answer: it is eonceived that this objection is *116 sufficiently answered by the foregoing observation» as to ^eac*> v‘z: Paymeld ®tntl distribution, of the estate of Ben. Head, sen. was not put in issue in the original cause, and therefore these payments and receipts relate to new and important matter not before in issue — the receipt of the guardian binds the infant; so of the election of the guardian — and when the guardian received the infant’s part of the estate of Sen. Head the elder, the infant could not afterwards come in under the resulting trust.
7th. The decree in favor of John L. Head supposes l.3⅝ only pajrt of bis share of the estate of Ben. Head the elder, when the inventory shews it was bis share to the full, and more: and so says the decree of the circuit court, which directs a credit therefor, after deducting his share of thes inventory, amounting to l, 5 5s. 5d. exclusive of what was paid for the negro woman, which was only l. 51 10s. 9d.
8th. Although this receipt was given in 1804, yet no interest is allowed on that, whilst lie is allowed hire of the negroes.
Tlie counsel feel that they have been surprised by the turn given to this esse by the opinion of the court, and feel confident’hat the inspection of the bills and answers, and record, will shew that the matters in the record, now brought up, were never in issue before.
All which is respectfully submitted.
TALBOT & BIBB, for appellants.
And on the 6th of December, 1820 Judge Mills delivered the following opinion:
This case was brought before this court, by the present appellees, who were originally complainants in the court below, and an opinion was then rendered in their favor, which will be found reported in 1 Marshall, 46, to which reference for a more particular statement of the case is made. As that opinion affirmed the opinion of the court below, as to some of the complainants, on the grounds that they had received their full proportion of the estate, out of which the negro Molly was purchased, in which the complainants were then decided to have an interest by a resulting trust, a petition for a rehearing as to these complainants was then filed, suggesting, among other things, that there was evidence in the cause conducing to shew that Elijah Perry, against whom that decision was rendered, was an infant when fae gave that receipt which had barred him; and that *117 there was bo proof to shew that William Perry, who wag also unfortunate in that decision, had given any authority to Robert Perry to execpte the receipt for him, by which he was barred, To obviate the effect of this petition, it was then agreed between the parties on the records of this court, that that opinion should he set aside as to said Elijah Perry and William Perry, and that the cause should be remanded to the court below, leaving it open for cither party there to contest the validity and effect of these receipts. The court below, as to these complainants, now appellees, decided that the proof did shew that Elijah Perry was an infant, after all the proof was taken, and that of course be was entitled, under the principles settled by the decree of this court, to his interest in the slave Molly and her children That court likewise decided that no authority to Robert Perry from William Perry was proved to have been given, authorising him (Robert) to execute the receipt for William, and that of course the said William was entitled to recover.
At the first term after the cause was retnanded, leave was given to either party to take depositions as to these points,, in controversy, between the complainants, Elijah and William Perry, and the defendants. The court also appointed Commissioners to assess the value of the slaves in contest, and their hire from the death of Grace Head in 1799, till the date of assessment; and also to make proper allowances to the defendants for the raising and maintaining the young and useless negroes. To this appointment no objections were made by the defendants, and the commissioners proceeded to make attempts to perform the duties assigned them, first, by meeting at ^he most convenient places in the neighborhood, where all the negroes were kept, and requiring their production, which was refused by the defendants. They next met at the houses of the defendants, or some of them; but the production of the slaves were refused by the defendants, so that the commissioners were prevented doing their duty in that way. An attempt was then made, at a meeting after notice given, and to ascertain by testimony the value of the slaves, their hire and maintenance. To this mode of proceeding one of the commissioners dissented, doubting his authority under the order of the court to proceed in that way; on which the comm^sioners broke up, and reported their'proceedings to court. That court then granted an order to the parties to take their deposi- *118 tfons generally. The complainants proceeded to take de* Pos^,oas as lo the value and hire of the slaves The defendants took no countervailing depositions, or any proving the price of maintaining the young and helpless slaves.— On this evidence the court below proceeded to assess the hire of the slaves, without the intervention of commissioners or jury; and after dividing it, decreed to the complainants the proportion to which each was respectively entitled. To this proceeding defendants excepted, and then prayed the intervention of commissioners or jury. At the same court at which the cause was remanded, the defendants in that court exhibited .their petition, partaking of the nature of an answer, praying that the decree of this court might be reviewed as by bill of review as to the complainant John L. Had, on the ground that they, the defendants, had found a receipt given by said John L Head to Benjamin Head, their intestate, of which they had no knowledge, and which, among the papers of the intestate, had been discovered after the first decree of this court. That paper acknowledged the receipt of twenty-four pounds two shillings and five pence, of Benjamin Head the younger, “it being out of his (J. L. Head’s) part that was due him out of the estate of Benjamin Head the elder,” and was dated August 16, 1804. This petition, in the nature of an answer, for the purpose of reviewing the decree as lo John L. Head, was allowed by the court below, and the opinion excepted to. John L. Head dented in that court that the receipt was genuine. Each party took depositions, attempting to prove it on one side and disprove it on the other. The defendants also took the deposition of John Smith, proving that John L. Head had confessed to him the receipt of his full share of the inventory of the estate of Benjamin Head the elder. At the trial or hearing of the cause, J. L. Head’s counsel admitted the genuineness of the receipt as to this cause, or rather that it should have the effect of a genuine receipt. The court below then decreed that the receipt was insufficient in its terms to prove that the said John L. Head had received the whole' of his share of the estate of Benjamin Head the elder, and thereby extinguished his interest by way of'resulting trust íd Molly and her children; but allowed the defendants a credit for part of it against his pro* portion of the hire of the slaves, and decreed to him the residue of the hire, and his interest in the slaves.
The defendants, after the hearing and the decree pro- *119 ftounced, called the attention of the court to two receipt^ one signed by John Smith as guardian for Polly Head, acknowledging the receipt of her proportion of the estate of Beujamin Head the elder; also an order drawn by Benjamin Head, the complainant, in favor of Voorheis, on tl\e defendant Macey, for his share of the estate of Benjamin Head the elder, which order was taken up by Macey; and also the deposition of John Smith, late guardian of Sally Head, now Sally Long, the complainant, also as guardian for Polly Head, now Polly Johnson the complainant, proving that he, as their guardian, had received the full amount of the inventory of Benjamin Head the elder: also a receipt of Willis Johnson, the complainant, shewing that he had received from John Smith, the guardian, the share of his wife, Polly Johnson the complainant. These papers appear to have been previously filed in the cause. The counsel for plaintiffs objected to them, as they were not set up or relied on in the answer. The counsel for the defendants then moved for leave to amend the answer and set up said papers, offering to submit to the hearing and decree immediately'. These receipts and Smith’s deposition were filed at the October term of the court below, 1017, and this motion was made at the March term, 1819. The court below rejected this application, among other reasons, because it came too late, and let the decree stand as pronounced. To this opinion of the court the defendants excepted. The court below', in the final decree, directed a division of the slaves, and appointed commissioners for that purpose, directing the commissioners to make the lots equal, if practicable; if not, to require of one party who might have a larger share, to execute his note to the other for the excess in the value of his lot. If the execution of such notes were refused, the commissioners were then to sell so many slaves as should be necessary to make the division equal.
The decision of the court on all these points, and on the merits of the decree, is questioned by the assignment of error, and shall be noticed in the order in which they have been recited.
As to the decree with respect to William and ElijahPer-ry, the point of authority to Robert Perry to receive,for William and execute the receipt, has not been proved, and success on this point has been yielded in argument. As to Kigali Perry, the proof shews him to be an infant at the *120 ¿ate of bis receipt. Of course the payment was made bj? Benjamin Head the executor of Benjamin Head the elder* in his own wrong. The receipt of an infant ought not to be construed as extinguishing the interest of the infant in the trust resulting to him. It is to protect infants from sacrificing their intereste, when they are supposed incapable of protecting these interests, that they are allowed to avoid their acts; and Elijah Berry ought not now to loose his benefit and share of the resulting trust, because while an infant he has done an act which might extinguish it. The rlecree is therefore right in adjudging to said William and Elijah Perry their interest ih the slaves.
Where rights are merely quitable, the chanceilor erof^ttUrT every fact himself, and tervention 0f a jury or commission-his mind.
On the point of the court proceeding to ascertain the hire ¿f the slaves, without the intervention of commissioners or ⅛⅛ court can see no error in the decree. Whatever may be the proper mode of ascertaining uncertain and unliqui-dated demands, in cases Where a court of chancery may bé compelled to decide legal rights or questions, oh account of defect of the remedy at law, it is a well settled principle that where both the right and the remedy are equitable, the l’,e r'S^ determining every question, and ascertaining every fact himself, necessary to a complete de-cisión of the controversy, and he is not bound to resort to ⅛ agenCy 0f auditors or iufy for that purpose, however con-vement they may he, and whatever may be their powers when called. 6 Crauch, 9, Field vs. Holland, &c. In this case both right and remedy were purely equitable. It is true an order appointing cotrimissioners had been made, which was not set aside; but the defendants Went into triwithout any objection On that account, and the decree virtually set aside that order, and no surprise can be pretended on the account of the existence of the order, because hone was alleged. After, however, the hearing was over* hnd a decree dictated, then the defendants became extreme-anxious for commissioners or a jury. This application to that court, and the assignment of it as error in this, comes with a bad grace from the defendants, after they had done every thing in their power to defeat the assessment by commissioner1!, and had subjected themselves, no doubt, to the coercive power of that court. In like manner they have but little reason to complain that nothing is allówed them the maintenance and support of the young and useless., negroes. They saw their adversaries taking depositions on* point of hire. They took none to shew the price of *121 maintenance. The commissioners appointed had power to ascertain the maintenance, yet when the decree for hire was pronounced, they became willing to submit to commissioners or jury, whose interposition they had so strenuously declined and defeated. It seems that the maintenance of the slares since the death of Grace Head must have been very small, if any thing, and the testimony as to her, altho' there is some variance in it, gave adata sufficient to make the assessment allowed by the court.
A view ⅛ not to be granted ^tnw*g^c* meriy ⅛ ⅛-sue in the same pause, newlydiscov^ ered, unless ⅛ evidence ^ ^"of ⅞
The next point to be considered, is the decree and ceedings with regard to John L. Head. The former decree of this Court was no doubt final and conclusive as to rights of the parties, and only left open the questions detail resulting from that determination. It could not altered or questioned, except it was reviewed in a proper mode, and on proper evidence. We have not thought necessary to decide on the propriety of the mode adopted in the present case, nor upon the sufficiency of the excuse offered for not producing the evidence on a former trial, cause the defendants were successful in the mode, and the sufficiency of their excuse in that court, and cannot complain of it now. But we are of opinion that although the evidence may have been of a nature sufficient to autho-rise a review, being in writing, yet taking that writing, wit, the receipt of John L. Read in its fullest extent, eould not authorise a review of the case; for it only proved á partial and not a total payment of the inventory of Benjamin Head the elder, and therefore could not extinguish the interest of J L. Head, the complainant, in the trust éstate. Aware of this, the defendants have attempted to make out their case by the deposition of John Smith, which went to prove J. L, Head’s acknowledgement. The influence of this was properly disregarded by the court below. To have permitted it, would have been directly counter to the principles of bills of review adopted by this court, and established by numerous authorities. It is well settled, that no review ought to be granted of a fact formerly in issue, on account of evidence newly discovered, unless that evidence be in writing or record, and does not consist in swearing only. Respass, &c. vs. M’Clanahan, Hard. 342. Whether the complainants were entitled to the resulting Irust ⅛ the slave Molly and her children, or whether they had extinguished their interest therein, was in issue at the former trial. To have admitted the influence, then, *122 Smith's deposition, and to have reversed the forraSr decision on its credit, would have been introducing, with all its consequences, the dangers and evils resulting from repeated litigation, and the subornation and perjury of witnesses. The receipt, then, alone, it has been said, was insufficient to reverse the determination on the right. A credit for its amount, however, has been allowed, and as J. L. Head does hot complain of this, the defendants cannot, and there is no error in this part of the decree.
As to the, application made to that court, after the rendition of the decree, to admit as evidence the receipts and vouchers with regard to the Shares of Benjamin Head the tomplainant, and of Sally Long and Polly Johnson, and to decree forthwith thereupon, it is the most extraordinary of ail the acts of the defendants in the conrt belotv; If they Seriously believed that that court could notice this evidence, afid thereupon reverse or review the former opinion,of this court upon it. when they had barely left the receipts in the office, and although given to themselves, they never before suggested the receipts in the pleadings at any stage of the cause, they certainly must have viewed the former opinion of this court, as a mere advice to them how to prepare their cause, and the final decree of the court below as a mere notice to prepare their pleadings, and the tocsin of alarm to begin to make ready for trial. In rejecting that application, there is then no error: Mor does this court discover anj in the details of the decree, except that part of it which directs notes from one defendant or party to another for the eXcess in the value of the lots, and if these notes were refused, a sale of the slaves, if they were found indivisible. We regret to disturb the decree on that ground, when justice might be done by the mode adopted, barely for the want of authority in the chancellor under the laws of this state to make such decree. With regard to slaves passing by descent, there is an express statute authorising a sale on account of their indivisibility; but as has been decided by this court in the case of Coleman vs. Hutchinson, 3 Bibb, 209, slaves held jointly by tenure of another nature, cannot be sold to effectuate a division. In the present case the complainants do not hold the slaves by descent, but by the effect of a resulting trust; and the joint interest of the defendants with them results from some of the co-complainants having parted with and extinguished their inte-#est. The decree, then, on this point only, must be rever *123 S«d with costs, and the cause remanded, with directions to that court, if the slaves shall be found indivisible, to decree them tobe held alternately by the parties according !o tbeir interest, and to coerce such holding by proper ordefsor decrees, unless the defendants consent to a sale.